# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KEVIN R. MESSETT,** | : No. 3:07cv02208 |
| **Plaintiff** | : (Judge Munley) |
| v. | : |
| **HOME CONSULTANTS, INC. D/B/A HCI MORTGAGE; RICHARD HARSCHE; and EDWARD HARSCHE,** | : |
| **Defendants** | : |

## MEMORANDUM

Before the Court for disposition are the defendants' motion for summary judgment (Doc. 84) and motion to strike plaintiff's response (Doc. 91). The motions have been fully briefed and are ripe for disposition.

## BACKGROUND

Plaintiff Kevin Messett ("Messett") signed a one-year employment contract ("2004 Employment Contract") with Defendant Home Consultants, Inc. ("HCI") in September of 2004, making him executive vice president. (2004 Employment Contract (Doc. 87-4)). The 2004 Employment Contract stated that Messett would be offered the position of president after ninety days. (Id. at § 1.02(a)).

Messett signed a promisory note dated January 1, 2005 under which he promised to repay $152,000.00 to HCI. (Promissory Note (Doc. 87-3)). No representative of HCI signed the note. (Id.) The promissory note had a maturity date of February 16, 2007. (Id.) As of July 2006, Messett owed a balance of $88,226.72 on the note to HCI, according to the defendants. (Def. Statement of Undisputed Material Facts ("SUMF") at ¶ 22).

On February 16, 2006, Messett signed another employment contract ("2006 Employment Contract") to continue as president of HCI for five years. (2006 Employment Contract (Doc. 89 at 3). The contract stated that

Messett became president effective September 20, 2005. (Id.) Under the 2006 Employment Contract Messett was to be paid a salary of $250,000.00, plus a bonus. (Id. at § 1.03). The contract referred to Messett borrowing $152,000.00 from HCI under the promissory note. (Id. at § 1.04(b)). The contract provided that HCI had the right to offset amounts owed by Messett against amounts owed to him by HCI. (Id. at § 4.05).

The 2006 Employment Contract also provided for Messett to receive 10% of HCI's quarterly calculated profits which were to be used to satisfy Messett's obligation on the promissory note. (Id. at § 1.04(b)). However, if quarterly profits fell below the "breakeven point" for four consecutive quarters, then Messett's base salary could "be reduced by not more than the original salary base of $120,000." (Id. at § 1.04(g)).

According to Messett, HCI profited in the second quarter of 2006, ending June 30, 2006, but did not pay him a bonus. (Answer at ¶ 21 (Doc. 6); Messett Pay Statements (Doc. 89 at 23)). Some personal expenses of Richard and Edward Harsche may have been paid from corporate profits. (Dep. of Donna Kiely at 37 (Doc. 89 at 26 to 27)). In June of 2006, Messett applied for a purchase money mortgage loan through HCI to buy a home. (Loan Documents (Doc. 89 at 17 to 21)).

In July of 2006, Edward Harsche told Messett that if business did not improve in thirty days, Messett would be fired. (Dep. of Kevin Messett at 255 (Doc. 87-2 at 31)). According to Messett, other employees who had received such warnings were terminated. (Id. at 294 to 95).

On July 20, 2006, HCI and Greenpoint Mortgage Funding, Inc. approved Messett and his wife Shannon Messett for their home loan. (Loan Documents (Doc. 89 at 17 to 21)). On August 2, 2006, the Messetts closed on their new home sometime in the afternoon. (Dep. of Kevin

Messett at 183, 191, 194 to 196 (Doc. 87-2); Loan Faxes (Doc. 87-8)). Messett sent an email at 1:52 p.m. on August 2, 2006 stating, "[a]s I depart the company I would like to make arrangements to continue to provide services as well as utilize the many avenues of business which HCI has to offer." (Separation Arrangements Email (Doc. 87-5)).

On August 7, 2006 Messett signed a resignation agreement. (Resignation Agreement (Doc. 87-6)). Under the agreement, Messett would be paid his normal salary through December 2006 and the terms of his employment agreement would remain intact. (Id.)

In a September 19, 2006 Letter, Richard Harsche, informed Messett that his salary was being reduced because HCI was not profitable. (Doc. 89 at 24). The letter also informed Messett that his future earnings would be applied towards the promissory note. (Id.) Messett was paid through September of 2006. (Def. SUMF at ¶ 26). The defendants characterize Messett's salary between October and December 31, 2006 as a severance which HCI opted to apply the outstanding debt Messett owed on the promissory note. (Def. SUMF at ¶¶ 25 - 27).

Messett, and his wife Shannon Messett, filed their complaint on November 1, 2007 in the Court of Common Pleas of Lackawanna County. (Compl. (Doc. 1-4)). The complaint alleges breach of contract (Count I), fraud (Count II), violation of the Pennsylvania Wage Garnishment and Collection Act, 43 PA. C.S.A. § 260.1 (Count III), unjust enrichment (Count IV), and violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1601, *et seq.* (Count V). (Id.)

The defendants removed the case to the United States District Court for the Middle District of Pennsylvania on December 5, 2007, based on the Court's original jurisdiction over the alleged violation of the FDCPA and its supplemental jurisdiction over Messett's state-law claims. (Notice of

3

Removal (Doc. 1)). See 28 U.S.C. §§ 1331, 1367, 1441.

The defendants answered the complaint on December 12, 2007, asserting counterclaims for breach of fiduciary duty, breach of duty of loyalty, breach of contract, conversion, and unjust enrichment. (Answer (Doc. 4)). Defendants filed an amended answer on January 17, 2008. (Am. Answer (Doc. 6)). On February 22, 2008 the Messetts answered the defendants' counterclaims. (Doc. 23). The case was assigned to the undersigned Judge on February 29, 2008. (Doc. 24).

On July 2, 2009, upon the defendants' motion, Defendant Jacqueline Dexhemier was dismissed for plaintiffs' failure to serve process upon her pursuant to Federal Rule of Civil Procedure 4(m). (Doc. 28). On July 31, 2009, this Court granted Plaintiff Shannon Messett's motion to dismiss her complaint, leaving Kevin Messett as the sole plaintiff. (Doc. 62).

On November 20, 2009, this Court approved a joint stipulation of dismissal with prejudice of all claims against, and counterclaims by, Defendants John Hart, Donna Kiely, Anthony Loscig, and Joseph McHale. (Doc. 83). The remaining defendants– Home Consultants, Inc., Edward Harsche, and Richard Harsche– moved for summary judgment the same day. (Doc. 84). On December 22, 2009, the defendants filed a "motion to strike plaintiff's response to defendants' motion for summary judgment" bringing the case to its present posture. (Doc. 91).

**JURISDICTION**

Because this case arises under the FDCPA, 15 U.S.C. § 1601, it presents a federal question under 28 U.S.C. § 1331 and gives the Court removal jurisdiction pursuant to 28 U.S.C. §1441(b) ("Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States shall be removable without regard to the citizenship or residence of the

4

parties."). We have supplemental jurisdiction over the plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

**LEGAL STANDARD**

The granting of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

When considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to

interrogatories showing that there is a genuine issue for trial. Id. at 324.

**DISCUSSION**

The defendants seek summary judgment on each of Messett's claims. We will address the federal claim first and then dispose of the state-law claims.[1]

**1. Claim under the Fair Debt Collection Practices Act**

The basis for Messett's claim under the FDCPA is that he executed a promissory note with HCI, and that HCI proceeded to collect on that note by withholding salary from him in violation of his employment agreement and resignation agreement. (Compl. (Doc. 1-4)). The defendants have moved for summary judgment on Messett's claim, arguing that their actions do not subject them to the FDCPA. Messett, however, failed to respond to the defendants' motion for summary judgment with regard to his FDCPA claim.

The FDCPA provides consumers with a remedy when they have been abused or deceived by debt collectors. Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1167 (3d Cir. 1987). It applies only to "debt collectors," as opposed to creditors who themselves attempt to collect on a debt. Police v. National Tax Funding, L.P., 225 F.3d 379, 403 (3d Cir. 2000) (citing Aubert v. Am. Gen. Fin., Inc., 137 F.3d 976, 978 (7th Cir. 1998).

The FDCPA defines a "debt collector" as "any person who uses any

---

[1] The defendants' motion to strike plaintiff's response (Doc. 91) will be denied in the order following this memorandum. To the extent that plaintiff's response relies on conclusory allegations from his complaint, the Court does not rely on such allegations in deciding defendants' motion for summary judgment.

6

instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Excluded from the reach of the FDCPA is "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor." Id. at (6)(F).

HCI, described in the promissory note as "the 'Lender,'" was the originator of the loan to Messett, "the 'Borrower.'" (Compl. at Ex. D (Doc. 1-4)). As such, HCI's efforts to collect on the loan are not covered by the FDCPA. See § 1692a(6)(F)(ii). Because Messett has not presented a genuine issue of material fact as to whether any of the defendants were collecting on a debt on behalf of a third party– as opposed to collecting as creditors– we will grant defendants' motion for summary judgment with regard to the FDCPA.

**2. Supplemental State-law Claims**

Having determined that summary judgment is appropriate on Messett's FDCPA claim– the only claim over which we had original jurisdiction– we have discretion to decline to exercise supplemental jurisdiction over Messett's remaining state-law claims. 28 U.S.C. § 1367(c)(3). Considering the nature of the claims remaining and the interests of judicial economy, convenience, and fairness, the Court determines that the remainder of the motion for summary judgment should

be denied without prejudice, and that the case should be remanded to the Court of Common Pleas of Lackawanna County.  <u>Figueroa v. Buccaneer Hotel Inc.</u>, 188 F.3d 172, 181-82 (3d Cir. 1999).

**CONCLUSION**

For the reasons stated above, summary judgment will be granted on Plaintiff Messett's claim under the FDCPA, and the remainder of the case shall be remanded to the Court of Common Pleas of Lackawanna County. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KEVIN R. MESSETT,** | : No. 3:07cv02208 |
| **Plaintiff** | : (Judge Munley) |
| v. | : |
| **HOME CONSULTANTS, INC. D/B/A HCI MORTGAGE; RICHARD HARSCHE; and EDWARD HARSCHE,** | : |
| **Defendants** | : |

## ORDER

**AND NOW**, this  22nd  day of April 2010, upon consideration of the defendants' motion for summary judgment (Doc. 84) and motion to strike plaintiff's response (Doc. 91), it is HEREBY **ORDERED** that:

1. Summary judgment is **GRANTED** as to plaintiff's claim under the Fair Debt Collection Practices Act;

2. The defendants' motion to strike plaintiff's response is **DENIED**; and

3. The case is **REMANDED** to the Court of Common Pleas of Lackawanna County for further proceedings on the remaining state-law claims for breach of contract (Count I), fraud (Count II), violation of the Pennsylvania Wage Garnishment and Collection Act (Count III), and unjust enrichment (Count IV).

The Clerk of Court is directed to **CLOSE** this case.

> **BY THE COURT:**
>
>  s/ James M. Munley
>
> **JUDGE JAMES M. MUNLEY**
> **United States District Court**